UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NJAMBI MUNGAI, | No. C-14-00289 DMR |
| Plaintiff(s), | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOCKET NO. 13]** |
| v. | |
| WELLS FARGO BANK ET AL, | |
| Defendant(s). | |

Defendants Wells Fargo Bank, N.A., HSBC Bank USA, N.A., and Federal National Mortgage Association (sued as "Fannie Mae") move to dismiss six of the seven claims in Plaintiff Njambi Mungai's amended complaint. *See* Am. Compl. [Docket No. 12], Motion [Docket No. 13]. For the reasons stated below, the motion is **granted in part and denied in part**.

## I. BACKGROUND

**July 2006: Purchase of the Property**

On July 16, 2006, Plaintiff purchased a property on Stoneridge Court in Oakland (the "Property"), executing a Promissory Note and Deed of Trust in favor of Defendant Wells Fargo. Am. Compl. at ¶¶ 14-15; Defs.' Req. Judicial Notice ("RJN") [Docket Nos. 14 and 19] Ex. 6.[1]

---

[1] The court grants Wells Fargo's unopposed request for judicial notice of Exhibit 4 (Notice of Default dated December 21, 2010), Exhibit 6 (Deed of Trust dated July 3, 2006), and Exhibit 7-2 [Docket No. 19-1] (Notice of Default dated January 30, 2014) because they are true and correct copies

Between July 2006 and October 2009, Plaintiff fully performed under her loan agreements by making a timely mortgage payment each month. Am. Compl. at ¶ 16.

**October 2009 - January 2010: First Forbearance Agreement, First Loan Modification Application**

On October 19, 2009, Plaintiff met with a Wells Fargo representative, Ashley Stankus, because Plaintiff was seeking a more affordable mortgage payment. Am. Compl. at ¶ 17. Stankus reviewed Plaintiff's financial information, and told Plaintiff that in order to be considered for a loan modification, she would have to make three payments under a forbearance agreement. Am. Compl. at ¶ 17.

On October 22, 2009, Plaintiff received a letter from Wells Fargo, stating that Plaintiff was "in default for 0 installments" and that Wells Fargo was offering Plaintiff a three-month "Special Forbearance Agreement," where Plaintiff's payments would be reduced from $4,756.00 per month to $2,486.00 per month from November 2009 until January 2010. Am. Compl. at ¶ 18; RJN Ex. 2. The letter also states that "[t]his is not a waiver of the accrued or future payments that become due, but a trial period showing you can make regular monthly payments." RJN Ex. 2. The letter also states that Wells Fargo will suspend foreclosure proceedings as long as Plaintiff kept to the terms of the forbearance agreement.

Plaintiff signed the forbearance agreement on October 30, 2009. RJN Ex. 2. The forbearance agreement states: "Currently, your loan is due for 0 installments, from November 1, 2009 through October 01, 2009 [sic]. The indebtedness of the referenced loan is in default . . . ." *Id.* The agreement also states that it "temporarily accepts reduced installments . . . . [but] [u]pon

---

of the official public records of the Alameda County Recorder's Office. The authenticity of these documents is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). The court also grants Wells Fargo's unopposed request for judicial notice of Exhibit 1 (Letter from Wells Fargo to Plaintiff dated October 22, 2009), Exhibit 2 (Forbearance Agreement signed by Plaintiff on October 30, 2009), Exhibit 3 (Letter from Wells Fargo to Plaintiff dated August 16, 2010), Exhibit 5 (Loan modification agreement signed by Plaintiff on July 27, 2011), and Exhibit 7-1 [Docket No. 14-7] (Adjustable Rate Mortgage Note dated July 3, 2006) because they are copies of documents referenced in the complaint whose authenticity no party questions. Plaintiff has not objected to the authenticity of Exhibits 1, 2, 3, 5, or 7-1.

2

successful completion of the Agreement, your loan will not be contractually current.  Since the installments may be less than the total amount due you may still have outstanding payments and fees." *Id.*  The forbearance agreement did not guarantee a loan modification at the end of the forbearance period.  Rather, it noted that upon completion of the forbearance agreement, "[a]ny outstanding payments and fees will be reviewed for a loan modification.  If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement." *Id.*

Plaintiff made three payments of $2,486.00 from November 2009 through January 2010. Am. Compl. at ¶ 18.

Plaintiff also alleges that at some point in October 2009, Plaintiff submitted a loan modification application.  Am. Compl. at ¶¶ 58 ("Beginning in October 2009, Plaintiff began submitting a loan modification application to Defendant Wells Fargo"), 62 ("Plaintiff applied for an extension of credit in October 2009, by completing a completed loan modification application.").

**January 2010: Second Forbearance Agreement and Second and Third Loan Modification Application**

On January 27, 2010, Plaintiff received a second three-month forbearance agreement, which would require payments of $3,335.13 per month from February 2010 to April 2010.  Am. Compl. at ¶ 18.  Plaintiff did not understand why she had received a second forbearance agreement rather than a loan modification, so she contacted Wells Fargo.  Am. Compl. at ¶ 19.  No Wells Fargo representative was able to tell Plaintiff why she had received the second forbearance agreement. Am. Compl. at ¶ 19.  Eventually, a Wells Fargo representative instructed Plaintiff not to sign the second forbearance agreement and transferred Plaintiff to a different Wells Fargo department which Plaintiff believed would restructure Plaintiff's loan.  Am. Compl. at ¶ 19.  After a conversation with this department, Plaintiff submitted a loan modification application.  Am. Compl. at ¶ 19.

Between February 2010 and July 2010, Plaintiff made weekly calls to Wells Fargo. Am. Compl. at ¶ 20.  Plaintiff alleges that she was provided confusing and contradictory information. Am. Compl. at ¶ 20.  On several occasions, Wells Fargo representatives confirmed that Plaintiff's

3

application had been received and instructed Plaintiff to wait for a determination on her application. Am. Compl. at ¶ 21. However, other representatives later told Plaintiff that her application had never been received and that she would have to reapply. *Id.* Plaintiff was also told that her loan had been transferred to a different department, that she would have to speak with a negotiator about her loan, and, on several occasions, that Wells Fargo did not have her loan. *Id.*

Plaintiff reapplied for a loan modification in May 2010, was approved, and was told by a representative that she would receive all the paperwork within a week. Am. Compl. at ¶ 22. However, when Plaintiff called to check on the status of her modification paperwork in June 2010, Plaintiff was told that the information that she had received in May 2010 was actually incorrect and that she would have to reapply. Am. Compl. at ¶ 22.

**June 2010 - December 2010: Wells Fargo's Refusal to Accept Payments, Fourth Loan Modification Application**

Between June 2010 and July 2010, Plaintiff began receiving calls from Wells Fargo stating that Plaintiff was behind in mortgage payments. Am. Compl. at ¶ 23. Plaintiff alleges that she was not behind on mortgage payments because she "was sending her payments on time every month." Am. Compl. at ¶ 23.

On August 18, 2010, Wells Fargo returned Plaintiff's check for $2,485.73, which Plaintiff believed would cover her August 2010 payment. Am. Compl. at ¶ 24; RJN Ex. 3 (Letter from Wells Fargo to Plaintiff dated August 16, 2010). Wells Fargo stated in an accompanying letter that "there are no written arrangements agreeing to accept the enclosed funds." *Id.* Plaintiff called Wells Fargo several times to ask why her payments were being refused and a Wells Fargo representative told Plaintiff that Wells Fargo would not accept any payments until Plaintiff reinstated or modified her loan. Am. Compl. at ¶ 24.

Between September 2010 and December 2010, Plaintiff again applied for a loan modification and continued attempting to submit payments, which Wells Fargo refused. Am. Compl. at ¶ 25.

**December 2010 - January 2011: Notice of Default, Fifth Loan Modification Application**

On December 21, 2010, Wells Fargo recorded a Notice of Default for on the Property which stated that Plaintiff was in arrears for an amount totaling $51,891.26 for failure to make installment

4

payments beginning in April 2010. Am. Compl. at ¶ 26; RJN Ex. 4. Plaintiff believed she had been current on her payments until Wells Fargo began refusing her payments in August 2010. Am. Compl. at ¶ 26. Nevertheless, because Plaintiff had been told on prior occasions that her only options were to reinstate the erroneous amount or apply for a loan modification, Plaintiff submitted yet another new loan modification application. Am. Compl. at ¶ 26.

On or about January 26, 2011, unbeknownst to Plaintiff, Defendant HSBC Bank acquired the beneficial interest under the Deed of Trust for Plaintiff's Property. Am. Compl. at ¶ 27.

**February 2011: Third Forbearance Agreement**

On February 9, 2011, following Plaintiffs' submission of a loan modification application, Wells Fargo sent Plaintiff a third forbearance agreement, which required Plaintiff to pay $2,526.00 per month between February 2011 through May 2011. Am. Compl. at ¶ 28. Plaintiff apparently signed this agreement. *See* Am. Compl. at ¶ 28. Plaintiff made all three payments on time and in full. Am. Compl. at ¶ 28.

**June 2011: Acceptance of Loan Modification Agreement, Conversation with Dominguez**

In June 2011, Plaintiff received a loan modification. Am. Compl. at ¶ 29. The terms of the agreement required Plaintiff to pay $1,488.00 per month for 23 months, followed by $3,683.33 per month for four months, and then $4,823.00 per month beginning in September 2013. Am. Compl. at ¶ 29. The principal balance of the loan was $57,919.59. *Id.*

Plaintiff telephoned Wells Fargo representative David Dominguez to discuss the loan modification and express her concerns about the payment schedule and principal amount. Am. Compl. at ¶ 30. Dominguez told Plaintiff that her options at that point were to reinstate the loan, accept the loan modification, or face foreclosure. Am. Compl. at ¶ 30. Dominguez indicated that "the investor of [the] loan was threatening to foreclose immediately if Plaintiff didn't accept the agreement." *Id.* Having received the earlier Notice of Default, Plaintiff felt that she had no choice but to accept the agreement, which she began paying on immediately. *Id.*

**June 2013 - February 2014: Sixth Loan Modification Application, Communication with Goode**

In June 2013, when Plaintiff's loan payments under the modification began to substantially rise, Plaintiff "began to pursue another loan modification, submitting all application materials

5

necessary for a review." Am. Compl. at ¶ 31. Plaintiff faxed the complete application to Wells Fargo on December 13, 2013. Am. Compl. at ¶ 68. On December 20, 2013, a Wells Fargo Home Preservation Specialist named Alyssa Goode confirmed, in writing, that Defendant had received Plaintiff's complete loan modification application. Am. Compl. at ¶ 32. Plaintiff alleges that Goode was Plaintiff's "single point of contact" between Plaintiff and Wells Fargo. Am. Compl. at ¶ 32. Between January 9, 2014 and February 5, 2014, Plaintiff called Goode to follow-up on her application materials. Am. Compl. at ¶ 33. However, each time Plaintiff called, Goode was unavailable, and Plaintiff left her a voicemail explaining her circumstances and asking for Goode to call her back. Am. Compl. at ¶ 33. Plaintiff never received a return call. Am. Compl. at ¶ 33. When Plaintiff attempted to contact Goode, she was referred to other Wells Fargo representatives, none of which could apprise Plaintiff of the status of her loan modification application and all of whom referred Plaintiff to Goode. *Id.*

**February 2014: Second Notice of Default**

On February 4, 2014, Defendants Wells Fargo and HSBC caused to be recorded another Notice of Default with the Alameda County Recorder's Office although Plaintiff had not received any determination on her loan modification application. Am. Compl. at ¶ 34; RJN Ex. 7-2. Plaintiff alleges that Wells Fargo had not contacted Plaintiff prior to recording the Notice of Default. Am. Compl. at ¶ 34.

**Causes of Action in this Lawsuit**

Plaintiff brings seven claims: (1) fraudulent inducement to contract, against all Defendants; (2) breach of the implied covenant of good faith and fair dealing, against all Defendants; (3) breach of contract, against all Defendants; (4) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, against all Defendants; (5) violation of California Civil Code § 2923.6, against Wells Fargo and HSBC; (6) violation of California Civil Code § 2923.7, against Wells Fargo; and (7) violation of California Civil Code § 2923.55, against Wells Fargo and HSBC.

Defendants move to dismiss Defendant Fannie Mae, as well as Claims 1, 2, 3, 4, 6, and 7. Defendants concede that Claim 5, for violation of California Civil Code § 2923.6, cannot be resolved on this motion to dismiss.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

"[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires." However, "[w]hen a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

## III. DISCUSSION

**A. Defendant Fannie Mae**

Defendant Fannie Mae moves to dismiss all claims against it. There are few allegations in the amended complaint against Fannie Mae. They are as follows:

> [Fannie Mae] is a diversified financial marketing and/or services company engaged primarily in residential mortgage banking and/or related businesses. Plaintiff is informed and believes and thereon alleges that Wells Fargo[2] regularly conducts business in Alameda County, California. Plaintiff is informed and believes and thereon alleges that Wells Fargo was the beneficiary under the promissory note and deed of trust during a substantial portion of the relevant events. The promissory note which establishes the relationship between Plaintiff and Defendant contains a provision for attorneys' fees.

Am. Compl. at ¶ 9. Plaintiff also alleges upon information and belief that each Defendant acted as an agent of or in joint venture with of each of the other Defendants, and at all times were acting within the scope of such agency, partnership, or concert of action. Am. Compl. at ¶ 13.

In her opposition to the motion, Plaintiff attempts to state additional facts relevant to Fannie Mae: (1) that Plaintiff is informed and believes that Fannie Mae was the holder of Plaintiff's Note during a substantial portion of the relevant events; and (2) that Fannie Mae is "mentioned on Plaintiff's Loan Modification Agreement, above Plaintiff's Loan Number."[3] Opp. [Docket No. 16] at 6. The court accepts as true the latter, which is presented on a judicially noticeable document referenced in the amended complaint and provided by Defendants, but rejects the former, since it is an allegation not in the amended complaint. However, even if the court were to accept both of Plaintiff's additional facts, they amount to speculation that Fannie Mae may have held Plaintiff's Note. These allegations are too vague and conclusory to state claims against Fannie Mae.

The claims against Fannie Mae are dismissed with leave to amend. Any amended complaint must specifically connect Fannie Mae's actions to each claim against it.

**B. Fraudulent Inducement to Contract**

---

[2] Plaintiff avers that the references to Wells Fargo in the paragraph about Fannie Mae are typographical errors, and that they were intended to be references to Fannie Mae.

[3] The court has taken judicial notice of the loan modification agreement, *see supra* n. 1, which was submitted by Defendants. The text at the top of the first page of the loan modification agreement reads, "Fannie Mae No: [blank] / Loan No.: [redacted]." RJN Ex. 5 at 1.

8

"An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "'Promissory fraud' is a subspecies of the action for fraud and deceit . . . where a promise is made without [] intention to perform, there is an implied misrepresentation of fact that may be actionable fraud." *Id.* The elements for a cause of action for fraud are: (1) a false statement or omission of a fact that should have been disclosed; (2) knowledge on the part of the defendant that the statement is untrue; (3) intent to deceive; (4) justifiable reliance by the alleged victim on the statement; and (4) resulting damage. *Id.*

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud or mistake." Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted). Vague or conclusory allegations are insufficient to satisfy the particularity requirement. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). To comply with Rule 9(b), fraud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. *Bly-McGee v. State of California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

It is not clear from the amended complaint exactly what statements or omissions form the basis of Plaintiff's fraudulent inducement to contract claim. In her opposition to the motion, Plaintiff clarified that this claim is premised on the June 2011 statements by Wells Fargo's representative David Dominguez. Plaintiff contacted Dominguez prior to signing the loan modification agreement, and "Dominguez told Plaintiff that her option at that point was to reinstate the loan, accept the loan modification, or face foreclosure."[4] Am. Compl. at ¶ 30. Dominguez also

---

[4] Defendants have focused their reply brief on whether or not Dominguez told Plaintiff about her option to have her original loan reinstated (in addition to the other two options of accepting the loan modification or facing foreclosure). This argument misapprehends the allegations in the amended complaint. Plaintiff alleges that Dominguez presented all three of these options to her. *See* Am. Compl. at ¶ 30.

9

indicated that "the investor of [the] loan was threatening to foreclose immediately if Plaintiff didn't accept the agreement." *Id.*

Plaintiff's theory for why Dominguez's statements qualify as a misrepresentation or omission is difficult to follow. Plaintiff argues that she was current on her mortgage payments in October 2009 when Defendants "maneuvered Plaintiff into a default scenario" by sending her a forbearance agreement. Am. Compl. at ¶¶ 16, 39. However, Dominguez's statements are irrelevant to the formation of the 2009 forbearance agreement, as Dominguez made the statements in 2011, nearly two years later. Plaintiff has not identified what aspect of Dominguez's statements are false, nor any omissions of fact that Dominguez should have disclosed. For these reasons, Plaintiff's fraudulent inducement to contract claim is dismissed with leave to amend.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing**

To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or . . . that he was excused from having to do [those things]; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff." *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (citing Judicial Council of California Civil Jury Instructions § 325 (2011)). "A plaintiff must show 'that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities.'" *Id.* (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990)). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992). The covenant of good faith does not prohibit a party from doing that which is expressly permitted by an agreement. *Id.* at 374.

Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing when Wells Fargo (1) refused to accept payments between August and December 2010, and (2) failed to

10

credit payments to her account, resulting in the Notice of Default filed in December 2010. Am. Compl. at ¶¶ 23-26, 45-49. Plaintiff contends that these acts interfered with her ability to perform under the Deed of Trust.

### 1. Rejection of August-December 2010 Payments

Plaintiff first argues that Defendants breached the covenant of good faith and fair dealing implied in the Deed of Trust by rejecting her payments from August 2010 to December 2010.

By accepting and performing under the first forbearance agreement, Plaintiff defaulted on her mortgage. At the least, by January 2010, Plaintiff was behind on her mortgage as a result of the three months of reduced payments she had made pursuant to that agreement. *See* RJN Ex. 2 (the forbearance agreement "temporarily accepts reduced installments . . . . [but] [u]pon successful completion of the Agreement, your loan will not be contractually current. Since the installments may be less than the total amount due you may still have outstanding payments and fees."); RJN Ex. 7-1 (promissory note for mortgage stating that if Plaintiff "do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default"). Plaintiff does not allege that she ever paid the shortfall on these three reduced payments. Thus, in January 2010, when Plaintiff did not accept the second forbearance agreement, her loan was limbo. Under the Deed of Trust, a borrower's right to post-default reinstatement of a loan requires that she "pay Lender all sums which then would be due under" the Deed of Trust. RJN Ex. 6 at ¶ 19. The Deed of Trust also permits the lender to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." RJN Ex. 6 at ¶ 1. The letter that Wells Fargo sent to Plaintiff returning her August 2010 check stated that Plaintiff's check was being returned because "the funds do not represent the total amount due to reinstate the account." RJN Ex. 3. Because Plaintiff's account had not been reinstated, Wells Fargo concluded that "[t]here are no written arrangements agreement to accept the enclosed funds" and declined to accept the check. *Id.*

At the hearing, Plaintiff conceded that if she was in default, Wells Fargo was acting within its rights under the Deed of Trust in rejecting Plaintiff's payments from August to December 2010, so that rejection could not serve as the basis for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. However, in her opposition to the motion and at the hearing, Plaintiff

11

offered a more complicated theory for why Wells Fargo's rejection of the checks constituted a breach of the covenant of good faith and fair dealing: Plaintiff argues that Wells Fargo's alleged misconduct induced Plaintiff to default, and under California law, a debtor's failure to perform under a contract is excused if it is induced by an act of a creditor. *See* Cal. Civ. Code § 1511. Plaintiff's good faith and fair dealing claim was not so pled in the amended complaint. Thus, the claim is dismissed insofar as it is premised on Wells Fargo's rejection of her payments, but with leave to amend.

### 2. Failure to Credit Account

Plaintiff's argument that Wells Fargo refused to credit Plaintiff's payments to her account requires some deduction. The Notice of Default recorded in December 2010 shows that Plaintiff was in arrears on her loan in the amount of $51,891.26 as of December 21, 2010. RJN Ex. 4. Plaintiff alleges that prior to October 2009, she fully paid all of her mortgage payments of $4,756 per month. Then, under the first forbearance agreement, she made three reduced payments of $2,486 from November 2009 to January 2010. Thereafter, Plaintiff alleges she "sen[t] her payments on time every month," but does not allege how much money she sent each time.[5] Plaintiff then received a second forbearance agreement that would have required her to pay $3,335.13 per month from February 2010 to April 2010. Although the amended complaint is vague on this point, it appears that Plaintiff did not sign the second forbearance agreement and instead submitted a loan modification application. Am. Compl. at ¶ 19. Beginning in June 2010, Plaintiff began receiving calls from Wells Fargo stating that Plaintiff was behind on her mortgage payments. Am. Compl. at ¶ 23. In December, Wells Fargo caused to be recorded a Notice of Default for Plaintiff's Property which stated that Plaintiff was in arrears for an amount totaling $51,891.26 for failure to make installment payments beginning in April 2010. RJN Ex. 4 at 3. From this, Plaintiff infers that Wells Fargo failed to credit the payments that Plaintiff made between April and August 2010.

Under the Deed of Trust, the lender may "accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse

---

[5] The check that Plaintiff sent Wells Fargo in August 2010 was for $2,485.73. RJN Ex. 3.

12

such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted." RJN Ex. 6 at ¶ 1. Instead, "Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower." *Id.*

As with Plaintiff's other basis for this claim, here Plaintiff concedes that if Plaintiff was in breach of obligations under the Deed of Trust, the Deed of Trust would permit Wells Fargo to receive Plaintiff's payments from April to August 2010 but not credit them as payments on the mortgage. Again, Plaintiff contends that her breach of the obligation under the Deed of Trust to pay the full mortgage amount was excused because it was wrongfully induced by Wells Fargo. This theory was also not pled in the amended complaint. Thus, the claim is dismissed insofar as it is premised on Wells Fargo's failure to credit Plaintiff's payments, but with leave to amend.

### D. Breach of Contract

The elements for a breach of contract claim are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mtg. Co. v. Reece,* 89 Cal.App.4th 731, 108 Cal.Rptr.2d 23, 33 (2001). Plaintiff alleges that Defendants breached the Deed of Trust by initiating foreclosure when Plaintiff was not in default under the loan agreement.

Under the promissory note, Plaintiff's failure to pay the full monthly mortgage amount would put her in default. RJN Ex. 7-1 (promissory note for mortgage stating that if Plaintiff "do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default"). The Deed of Trust gives Wells Fargo the right to initiate foreclosure proceedings in the event that Plaintiff defaults on her loan. RJN Ex. 6 at ¶ 22. It also specifies that a lender's forbearance does not serve as a waiver of its right to foreclose. RJN Ex. 6 at ¶ 12 ("Any forbearance by Lender in exercising any right or remedy including . . . Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver or preclude the exercise of any right or remedy.").

Plaintiff agreed to pay and did pay less than her monthly mortgage payments pursuant to the first forbearance agreement, and thus defaulted. *See* RJN Ex. 2 (the forbearance agreement

13

"temporarily accepts reduced installments . . . . [but] [u]pon successful completion of the Agreement, your loan will not be contractually current").

For this reason, even accepting Plaintiff's allegations as true, Wells Fargo acted within its rights under the Deed of Trust when it initiated foreclosure proceedings against Plaintiff after Plaintiff fell behind on her mortgage payments and failed to pay off her arrearage. At the hearing, Plaintiff raised the alternative theory described above: that Plaintiff was not in breach of the Deed of Trust and had not defaulted on the promissory note because her performance was excused when Defendants' wrongfully induced her to not perform. Defendants' motion to dismiss the breach of contract claim is therefore granted with leave to amend.

**E. ECOA Claim**

The ECOA prohibits discrimination against an applicant for credit based on race, color, religion, national origin, sex or marital status, or age. *See* 15 U.S.C. § 1691(a). In addition, it establishes procedural requirements that creditors must follow in notifying *any* applicant when action is taken on the credit application. *See* 15 U.S.C. § 1691(d). Under the ECOA, within thirty days of receiving a completed application for credit, a creditor shall notify the applicant of its action on the application. 15 U.S.C. § 1691(d)(1); *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1041 (N.D. Cal. 2010). Plaintiff alleges that Defendants violated the ECOA by failing to notify Plaintiff of an answer to her October 2009 loan modification application within this deadline.

Defendants argue that Plaintiff failed to file her ECOA claim within its statute of limitations. Prior to 2010, the statute of limitations for ECOA claims was two years. The ECOA was amended in 2010 and the relevant statute of limitations was extended to five years. *See* 15 U.S.C. § 1691e(f) (2010). Plaintiff has not pointed the court to any case in which a court retroactively applied the five year statute of limitations period to ECOA violations occurring prior to 2010, such as Plaintiff's claim premised on Defendants' alleged failure to notify her of action taken on her October 2009 loan modification application. In contrast, at least one court has declined to apply the five year statute of limitations period to ECOA violations occurring prior to 2010. *See Cabrera v. Countrywide Home Loans Inc.*, No. C 11-4869 SI, 2013 WL 1345083 at * 4 (N.D. Cal. Apr. 2, 2013) ("[T]o apply the 2010 ECOA amendments [to conduct occurring in 2007] would serve to 'revive a stale claim,'

14

which the Ninth Circuit has determined would lead to a 'manifest injustice,' and has accordingly not permitted.") (quoting *Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 538-39 (9th Cir. 1994)).

At the hearing, Plaintiff conceded that her ECOA would be barred by the pre-2010 two year statute of limitations. The ECOA claim is therefore dismissed without leave to amend.

**F. California Civil Code § 2923.7**

The California legislature has enacted a "single point of contact provision" ("SPOC") in order "to prevent borrowers from being given the run-around." *Rockridge Trust v. Wells Fargo NA*, 13-CV-01457-JCS, 2014 WL 688124 (N.D. Cal. Feb. 19, 2014) (quoting *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 904-05, 153 Cal. Rptr. 3d 546, 572 (2013)). Specifically, Section 2923.7 of the California Civil Code provides: "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). Among other things, the SPOC must possess sufficient knowledge about foreclosure alternatives, and he or she must have access to individuals who have the ability and authority to stop foreclosure proceedings. Cal. Civ. Code § 2923.7(b).

Defendants' primary argument in favor of dismissing this claim is that Plaintiff did not allege that she requested a single point of contact. This argument misconstrues the statute. Under the plain meaning of the statute, a mortgage servicer's obligation to establish a single point of contact is triggered "upon request from a borrower who requests a foreclosure prevention alternative," not upon request from a borrower who requests a single point of contact. In the phrase "upon request from a borrower who requests a foreclosure prevention alternative," the words "upon request" and "a borrower who requests" refer to the *same* request; namely, the borrower's request for a foreclosure prevention alternative. The phrase "upon request" simply indicates *when* the SPOC must be assigned (i.e., upon the borrower's *request* for a foreclosure prevention alternative, as opposed to the borrower's *selection* of a foreclosure prevention alternative).

There is scant case law interpreting Section 2923.7, which has been in effect for less than a year and a half. The court could not locate any cases from California courts addressing the issue; only a handful of federal cases have spoken on this question. Courts in this district interpret Section

15

2923.7 such that the servicer's obligation to provide an SPOC is triggered by the borrower's request for a foreclosure prevention alternative rather than a specific request for an SPOC. *See Rockridge Trust*, 2014 WL 688124 at *23 ("[S]ection 2923.7 of the California Civil Code provides that upon a borrower's request for a foreclosure prevention alternative, the servicer must promptly designate one person to be the point of contact to communicate directly with the borrower."); *Garcia v. Wells Fargo Bank N.A.*, No. C 13-3670 PJH, 2014 WL 458208 at *4 (N.D. Cal. Jan. 31, 2014) (Section 2923.7 "establishes Wells Fargo's duty to designate a single point of contact upon a borrower's request for a foreclosure prevention alternative"); *Pitre v. Wells Fargo Bank, N.A.*, No. C 13-00552 WHA, 2013 WL 4777159 at *3 (N.D. Cal. Sept. 6, 2013) ("[I]t has been law since January 1, 2013, that lenders and loan servicers must designate a single point of contact for each borrower in default. Cal. Civ. Code Section 2923.7."); *Martinez v. Wells Fargo Bank, N.A.*, No. 13-CV-05597 EJD, 2014 WL 1572689 at *3 (N.D. Cal. Apr. 17, 2014) ("Plaintiff did not state a claim under Civil Code § 2923.7 because he did not allege that he requested a 'foreclosure prevention alternative' as indicated by the statute.").[6]

As with other courts in this district, this court construes the statute as not requiring a borrower to make a separate request for an SPOC. Plaintiff's submission of a loan modification application to Wells Fargo on December 13, 2013 qualifies as Plaintiff's request for a foreclosure prevention alternative, triggering Defendants' obligation to assign Plaintiff an SPOC. *See* Cal. Civ. Code § 2920.5 (defining a "foreclosure prevention alternative" as "first lien loan modification or another available loss mitigation option").

Defendants next argue that Plaintiff's dissatisfaction with her SPOC does not constitute a violation of Section 2923.7. Plaintiff alleges that her SPOC Alyssa Goode failed to return all of Plaintiff's phone calls between January 9 and February 5, 2014, despite Plaintiff leaving messages explaining her circumstances and asking Goode to return her call. Plaintiff was referred to other

---

[6] Courts in the Central District of California appear to be split on the issue. *Compare Mann v. Bank of Am., N.A.*, No. 5:13-CV-02293-CAS, 2014 WL 495617 at *4 (C.D. Cal. Feb. 3, 2014) ("[Section] 2923.7(a) directs servicers to establish 'single point of contact' . . . when borrowers request assistance with preventing foreclosure.") *with Williams v. Wells Fargo Bank, NA*, No. CV 13-02075 JVS, 2014 WL 1568857 at *8 (C.D. Cal. Jan. 27, 2014) ("[T]he text of section 2923.7 requires that the borrower make a specific request for a single point of contact.").

16

Wells Fargo representatives, "none of which could apprise Plaintiff of the status of her loan modification application and all of whom referred Plaintiff to her single point of contact." Am. Compl. at ¶ 33. While it is true that the statute does not define how frequently an SPOC must communicate with a borrower, a mortgage servicer may not simply make a nominal "appointment" of an SPOC who never communicates with the borrower. *See Garcia*, 2014 WL 458208 at *4 (denying motion to dismiss Section 2923.7 claim where plaintiff alleged that her SPOC was unresponsive to her phone calls). Furthermore, Section 2923.7 requires the SPOC to "adequately inform the borrower of the current status of the foreclosure prevention alternative" and to "ensur[e] that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any." Cal. Civ. Code § 2923.7(b)(1)-(5). Finding that a mortgage servicer complies with Section 2923.7 when it assigns an SPOC who fails to communicate with the borrower would render the SPOC requirement a nullity. *See Mann*, 2014 WL 495617 at *4 (finding that SPOC must remain the same person throughout the borrower's interaction with the servicer or else the requirement would be rendered a nullity) (citing *In re Cervantes,* 219 F.3d 955, 961 (9th Cir. 2000) ("[S]tatutes should not be construed in a manner which robs specific provisions of independent effect.")). Thus the court denies Defendants' motion to dismiss Plaintiff's Section 2923.7 claim.

### G. California Civil Code § 2923.55

California Civil Code § 2923.55 requires a mortgage servicer to contact the borrower in person or via telephone to assess the borrower's financial situation, to explore options of avoiding foreclosure, and to provide other information, at least 30 days prior to recording a notice of default. Cal. Civ. Code § 2923.55(a)(1), (b)(2). Even if a mortgage servicer is unable to contact a borrower, it may still record a notice of default, provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. Cal. Civ. Code § 2923.55(f).[7] Plaintiff alleges that Defendants violated Section 2923.55 by failing to contact Plaintiff in the required manner prior

---

[7] The statute defines "due diligence" to require specific actions designed to contact the borrower, e.g. the mortgage servicer must attempt to contact a borrow via first-class mail, attempt to call the borrower at certain intervals, and post a prominent link on its website to certain information related to avoiding foreclosure. Cal. Civ. Code § 2923.55(f)(1)-(5).

to recording the Notice of Default in February 2014.

Defendants respond that Plaintiff and Wells Fargo must have been in contact prior to the February 2014 Notice of Default, because Plaintiff alleges that she submitted a loan modification application to Wells Fargo in June 2013 and received a letter in response on December 20, 2013, confirming that Wells Fargo had received her loan modification application. However, even accepting Defendants' logical leaps, this argument is flawed because the statute requires contact via specific means about specific topics, rather than just coincidental contact between the mortgage servicer and the borrower.

In their reply brief, Defendants offer two additional arguments for the first time. "Legal issues raised for the first time in reply briefs are waived." *United States v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998) (citing *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir. 1990) and *Dilley v. Gunn,* 64 F.3d 1365, 1367 (9th Cir. 1995)). The court therefore declines to consider these arguments.

Defendants' motion to dismiss Plaintiff's claim under Section 2923.55 is denied.

## IV. CONCLUSION

The court holds as follows:

- Defendant Fannie Mae is dismissed, but Plaintiff may amend her complaint to re-allege claims against Fannie Mae if she is able to make non-conclusory allegations that connect Fannie Mae to the violations alleged.
- The fraudulent inducement to contract claim is dismissed with leave to amend.
- The breach of the implied covenant of good faith and fair dealing claim is dismissed with leave to amend.
- The breach of contract claim is dismissed with leave to amend.
- The ECOA claim is barred by the statute of limitations, and is dismissed without leave to amend.
- The motion to dismiss the Section 2923.7 claim is denied.
- The motion to dismiss the Section 2923.55 claim is denied.

Any amended complaint must be filed by **June 17, 2014.**  As this will be the second amended complaint, Plaintiff must plead her best case.

IT IS SO ORDERED.

Dated: June 3, 2014



DONNA M. RYU
United States Magistrate Judge